UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JERMAINE JONES | : | PRISONER<br>CIVIL NO. 3:03CV595 (JBA)(JGM) |
| V. | : | |
| LARRY MYERS, ET AL. | : | OCTOBER 22, 2004 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

**I.   FACTS**

By Amended Complaint dated July 22, 2003, the plaintiff, a pro se inmate, brings this action against six Connecticut, Department of Correction officials.[1] The plaintiff alleges that on December 20, 2002, he was incarcerated at Northern Correctional Institution and was "attacked" and subsequently involved in a fight with his cellmate during which his cellmate brandished a weapon. Allegedly, the defendants used "excessive force" when breaking up this altercation between the two inmates. Specifically, the plaintiff alleges that a canine was wrongfully utilized by correctional officials after the situation was "under control." The plaintiff requests $100,000 in damages from each defendant and $1,000,000 in damages from the defendants in their "official capacity."

The undersigned defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for Summary Judgment on all of the plaintiff's claims. The uncontroverted evidence surrounding this incident demonstrates that the defendants acted professionally and appropriately in breaking up the fight between the two inmates. In fact, considering the circumstances, a very

---

[1] Former Warden Myers, Major Coates, Captain Regan, Lieutenants Salius and Marinelli and Correctional Officer Duscharme.

minimal amount of force was used by the correctional officials. Additionally, the canine was utilized exactly as intended, to minimize physical risk to the correctional officials, and the inmates involved in the fight, including the plaintiff. Based on this evidence, the plaintiff cannot assert a viable "excessive force" claim against the defendants. Additionally, assuming that the plaintiff does assert a viable "excessive force" claim, five of the six defendants should be dismissed due to a lack of personal involvement in the alleged constitutional violation. Finally, any remaining defendants would be entitled to summary judgment on the basis of Qualified Immunity.

## II.    STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment "…if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "[T]he mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. A "material fact" is one whose resolution will affect the ultimate determination of the case. Id. In comment regarding the use of summary judgment, the Supreme Court has stated:

> summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules, as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.

Celotex, Corp. v. Catrett, 477, U.S. 317, 327 (1986).

Used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials," Capital Imaging Assocs. v. Mohawk Valley Medical Assoc., 996 F.2d 537, 541 (2d Cir.), cert. denied, 510 U.S. 497 (1993), and to "isolate and dispose of factually unsupported claims." Celotex Corp., at 323-324. "Summary Judgment serves as the ultimate screen to weed out truly insubstantiated lawsuits prior to trial." Crawford-El v. Britton, 523 U.S. 574, 118 S. Ct. 1584, 1598, 140 L.Ed.2d 759 (1998).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the pleadings, affidavits or other documentary evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Those facts that are material fact will be identified by the substantive law governing the case. Anderson, 477 U.S. at 248. Once the moving party meets its burden, the burden shifts to the non-moving party.

To defeat a motion for summary judgment, the non-moving party may not merely rely upon unsupported allegations made in the complaint, nor rely on "mere speculation or conjecture" to overcome a motion for summary judgment. Knight v. Fire Insurance Company, 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987). Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment. Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999). Additionally, the evidence presented in opposition to summary judgment must be presented in a manner consistent with its admissibility at trial. See First National Bank Co. of Clinton, Ill. V. Insurance Co. of North America, 606 F.2d 760 (7th Cir. (1979) (in ruling on summary judgment motion, the Court properly relied upon documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to the litigants from third person, and hearsay which

does not fall under one or more exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not be properly considered. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct 1598 2 L.Ed.2d 142 (1970); Benyene v. Coleman Security Service, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. v. Stansy Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941). Moreover, plaintiff must point to "specific facts showing that there is a genuine issue for trial." Rule 56(e); Anderson, 477 U.S. at 248; see also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (Party may not rely on conclusory statements or an argument that the affidavits in support of the motion are not credible). Plaintiff must also produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial. Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987).

### III. THE UNCONTROVERTED FACTS DEMONSTRATE THAT THE PLAINTIFF CANNOT ASSERT A CONSTITUTIONALLY VIABLE EXCESSIVE FORCE CLAIM

42 U.S.C. § 1983 provides for liability for the deprivation, under the color of state law, "of any rights, privileges or immunities secured by the Constitution." The plaintiff asserts that he brings this action for "excessive force" pursuant to the Eighth Amendment. The Eighth Amendment sets constitutional limits on conditions of imprisonment. "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however. After incarceration, only the 'unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting Ingraham v. Wright, 430 U.S. 651, 975 S.Ct. 1401, 51 L.Ed.2d 711 (1977)).

To demonstrate an Eighth Amendment violation, a plaintiff must make two showings. First, the alleged punishment must be "objectively, sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting Wilson v. Seitzer, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). The objective component is "context specific, turning upon 'contemporary standards of decency.'" Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999) (quoting Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

To satisfy the subjective requirement, the inmate must show that the prison officials' actions were characterized by "wantonness." Davidson v. Flynn, 32 F.2d 27, 29 (2d Cir. 1994); Whitley v. Albers, 475 U.S. at 319. In excessive force cases, the "wantonness" inquiry turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Blyden v. Mancusi, 186 F.3d 252, 262 (quoting Hudson v. McMillian, 503 U.S. at 7). "Because decisions to use force often are made under great pressure and involve competing interests the good-faith standard is appropriate." Blyden v. Mancusi, 186 F.3d 252, 263. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates a prisoner's constitutional rights." Id., (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

While a significant injury is not a prerequisite to an Eighth Amendment violation, "a *de minimus* use of force will rarely suffice to state a constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993). The extent of the plaintiff's injury is just one factor to be considered in determining whether force used by correctional officials was excessive. "Thus, the seriousness of the injury is 'relevant to the Eighth Amendment inquiry, but does not end it.'" Johnson v. Coughlin, 1997 U.S. Dist. LEXIS 6378 (W.D.N.Y. April 2, 1997). The other factors

5

which a court must consider are: "The need for the application of force, the correlation between the need for force and the amount of force used, the threat reasonably perceived by the defendants, and any efforts made by the defendants to temper the severity of a forceful response." Brown v. Busch, 954 F. Supp. 588, 594 (W.D.N.Y. 1997) (citing Whitley v. Albers, 475 U.S. 312, 321, 89 L.Ed.2d 251, 106 S.Ct. 1078 (1986).

Applying these standards to the plaintiff's claim of excessive force, it is evident that a valid claim cannot be asserted in the first instance. The plaintiff cannot demonstrate that the use of force by the correctional defendants was "objectively, sufficiently serious" or that the force used was not applied in a good faith effort to maintain or restore discipline within the correctional facility. The plaintiff admits that he was involved in a fight in his cell with his cellmate and that his cellmate brandished a weapon. The plaintiff asserts that the lights were off in his cell and that he was scared for his life. (Complaint, p. 4). Based on this factual premise, it cannot be reasonably contested that the responding correctional officials were compelled to utilize *some force* to quell the combatants and restore discipline. It does not appear from his complaint that the plaintiff takes issue with the general use of force by correctional officials to break up the altercation.[2] Rather, the plaintiff focuses his allegations on the deployment of the canine. Plaintiff asserts that the incident was largely under control and the combatants were "separated" and the cellmate was being escorted from the cell when the canine was deployed. (Complaint, p. 4).

---

[2] If the plaintiff's allegations are interpreted to challenge the general use of force by the correctional officials, or the use of the chemical agent, it is clear that this action was necessary to neutralize the active altercation between the two inmates, one of whom had a weapon. In fact, the plaintiff admits in his complaint that the use of the chemical agent was successful in gaining possession of the cellmate's weapon. (Complaint, para. 4).

6

The best evidence of what occurred during this incident, a videotape of the incident, clearly shows that the plaintiff's allegations are simply not true. (See, Attachment A, NCI-02-1079, Videotape of December 20, 2002). The evidence demonstrates that the plaintiff entered his cell (#106) at approximately 5:00 p.m. and was confronted by his cellmate and an altercation ensued. (Id.). Almost immediately, several correctional officials responded, along with a canine. (Id.). When the canine enters the cell shortly thereafter, it is clear that the two combatants are still fighting and are not separated, and there is no evidence that the cellmate's weapon had been surrendered. (Id.). The videotape clearly refutes the plaintiff's allegation that the canine was deployed, and then taken off of the plaintiff, and "they had him attack me again." (Id.). In fact, once the canine was effectively deployed to neutralize the situation, the dog was promptly called back and taken out of the cell. (Id.). Indeed, the canine was in the cell for no more than five seconds. (Id.).

To defeat a motion for summary judgment, the non-moving party may not rely on unsupported and conclusory allegations in his complaint. Knight v. Fire Insurance Co., 804 F.2d 9, 12 (2d Cir. 1986). Despite the plaintiff's conclusory allegations, it is evident that the force used by the defendants to quell the physical altercation between the two inmates was used appropriately in a good faith manner to restore discipline. Additionally, the plaintiff's brief encounter with the canine was not "objectively sufficiently serious" to justify an Eighth Amendment claim. Indeed, the evidence demonstrates that the use of the canine *protected the plaintiff* from physical harm as it prevented his cellmate from further attack and stopped the altercation. (Id.). Based on the foregoing, the plaintiff has failed to assert a viable excessive force claim pursuant to the Eighth Amendment and all of the defendants are entitled to judgment as a matter of law.

### IV. **PLAINTIFF CANNOT DEMONSTRATE THE REQUISITE PERSONAL INVOLVEMENT OF THE DEFENDANTS IN THE ALLEGED CONSTITUTION DEPRIVATION**

Assuming <u>arguendo</u> that the plaintiff has asserted a viable constitutional claim against the correctional officials for excessive force, it is readily evident that defendants Warden Myers, Major Coates, Captain Regan, Lieutenant Salius, and Lieutenant Marinelli had no personal involvement in the alleged constitutional violation and as such, are entitled to summary judgment.

In order to prevail on a claim under Section 1983 against an individual, a plaintiff must prove that the defendant (1) acted under color of state law, (2) in a manner that deprived the plaintiff of "any rights, privileges, or immunity secured by the Constitution." 42 U.S.C. § 1983, see <u>Parratt v. Taylor</u>, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912-13, 63 L.Ed.2d 420 (1981). Section 1983 imposes liability for "conduct which 'subjects or causes to be subjected' the plaintiff to a deprivation of a right secured by the Constitution and laws." <u>Rizzo v. Goode</u>, 423 U.S. 362, 370-71, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976). Accordingly, "personal involvement of a defendant in an alleged constitutional deprivation is a prerequisite to an award of damages under [Section] 1983." <u>Williams v. Smith</u>, 781 F.2d 319, 323 (2d Cir. 1986). A plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation. See <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994); and plaintiff must prove a tangible connection between the acts of the defendant and the injuries suffered. <u>Bass v. Jackson</u>, 790 F.2d 260, 262 (2d Cir. 1986).

In the present case, the plaintiff makes a number of allegations that are explicitly directed against the correctional officer who was the canine handler during the incident. (<u>See</u> Complaint). However, he cannot present any evidence to demonstrate the personal involvement of the other

named defendants in any of his claims. Accordingly, these defendants are entitled to summary judgment.

### A. Warden Myers and Major Coates

The plaintiff does not allege that Warden Myers or Major Coates participated in the incident of December, 2002, had knowledge of the incident, or played any direct role in the incident. (See Complaint). Indeed, the only allegation against Warden Myers is that "he is in care of the inmates safety and health and is over authority over Lieutenant Marinelli, Captain Regan, and Officer Duscharme K-9 handler." (Complaint, p. 5). This allegation is plainly insufficient to assert a viable claim against Warden Myers. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (A supervisor may not be held liable under Section 1983 merely because they occupy a high position of authority in the prison system); Leonard v. Poe, 282 F.3d 123, 140 (2d Cir. 2002) (Even if a subordinate allegedly commits a constitutional tort, a supervisor cannot be held liable under Section 1983). Concerning Major Coates, the plaintiff's allegations have only to do with his processing of the plaintiff's grievance relating to this incident. (Complaint, p. 3). Accordingly, defendant Coates is also entitled to judgment as a matter of law.

### B. Lieutenant Salius. Captain Regan, Lieutenant Marinelli,

The plaintiff specifically alleges that canine officer Duscharme "let the K-9 go on me" and then "Defendant Duscharme took the dog off me, and then had him attack me again." (Complaint, para. 4). As for the above defendants, the plaintiff dispositively fails to allege that they played any direct role in the deployment of the canine. The plaintiff alleges that defendant Salius responded to the incident and used chemical spray to get the weapon from the cellmate. (Complaint, para. 4). There are no allegations (or evidence from the videotape) that Lieutenant

9

Salius played any role in the deployment of the canine. Accordingly, Lieutenant Salius is entitled to summary judgment.[3]

Additionally, the plaintiff alleges as follows, "Captain Regan was the one who had ordered the K-9 use and failed to protect the plaintiff"; (Complaint, p. 5); and "Lieutenant Marinelli was there watching the attack being taken out by Defendant Officer Duscharme and refused to have him to stop." (Complaint, p. 6). Despite these allegations, the uncontroverted evidence, i.e., the videotape, clearly demonstrates that supervisors Regan and Marinelli were not personally involved in the deployment of the canine. The incident is very brief and controlled and it is evident that at all times, the canine is in the control of Correctional Officer Duscharme. Additionally, the deployment of the canine was so brief and controlled (3 to 5 seconds in cell) it cannot be reasonably asserted that the other officers failed to intervene. Indeed, due to the short time period that the canine was in the cell, it is not even plausible that one of the other correctional officials could have intervened.

Based on the foregoing, the plaintiff cannot support a claim that these defendants had the requisite personal involvement in the alleged constitutional deprivation.

V.  **ALL OF THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE BASIS OF QUALIFIED IMMUNITY**

The qualified immunity defense is a well-established doctrine that protects government officials performing discretionary functions from liability for civil damages, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have know." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also

---

[3] As previously stated, if plaintiff's allegations are interpreted to challenge the use of the chemical agent, plaintiff's own allegations defeat this argument as he admits that the use of the chemical agent was effective in gaining possession of the cellmate's weapon. (Complaint, para. 4).

Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, reh'g denied 111 S.Ct. 2930 (1991). Even where the contours of the plaintiff's federal rights are clearly established at the time of the defendant's acts, "the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights." Robinson v. Via, 821 F.2d 913, 921 (2d Cir. 1987). As our Court of Appeals has observed, "the standard governing the availability of this defense has evolved into one of objective reasonableness, designed to 'permit the resolution of many insubstantial claims on summary judgment.'" Robinson, supra at 290 (quoting Harlow, 456 U.S. at 818).

Recently, the Supreme Court has reiterated that a qualified immunity defense should be ruled upon:

> … early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed 2d 411 (1985). The privilege is an "immunity from suit rather than a mere defense to liability; and like an absolute immunity; it is effectively lost if a case is erroneously permitted to go to trial." Ibid. As a result "we repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curium).

Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156 (2001); see also, Cartier v. Lussier, 955 F.2d 841, 843 (2d Cir. 1992).

In Saucier, plaintiff was a demonstrator who was arrested by a military police officer as he attempted to unfurl a banner at an event at which the Vice President Gore was to speak. 121 S.Ct. at 2154. As he did so, officers grabbed him from behind, one on each arm, and removed him half-walking, half-dragging him with his feet "barely touching the ground" to a military van where he was shoved or thrown inside. Id. He brought an action against the officers alleging, inter alia, excessive force. While the district court and Court of Appeals for the Ninth Circuit denied Officer Saucier's qualified immunity defense on the basis that there existed disputed

issues of material fact as to whether excessive force was used, the Supreme Court reversed and remanded. In doing so, the Court emphasized that the qualified immunity analysis could not be merged into the question of whether unreasonable force was used in making the arrest. Id. at 2158.

> The qualified immunity inquiry … has a further dimension. The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

Id.

Applying this standard, it is evident that the defendant correctional officials are entitled to Qualified Immunity. By his own admission, the plaintiff was involved in a physical altercation with his cellmate during which his cellmate brandished a weapon. In fact, the plaintiff asserts that he was scared for his life. The correctional officials promptly responded to this incident and successfully broke up the fight through the deployment of a canine. The use of force by the correctional officials was very brief, and effective, as it successfully quelled the potentially dangerous altercation. Clearly, at all times pertinent to this incident, the defendants acted in an objectively reasonable manner and, as such, are entitled to qualified immunity.

## VI.    CONCLUSION

A review of the videotape of this incident demonstrates the frivolous nature of plaintiff's action and also serves to highlight the virtually impossible position that our correctional officials are placed in on a daily basis. As he entered his cell, the plaintiff, an inmate at the State's maximum security correctional facility, was attacked by his cellmate, who possessed a weapon. The lights were off in the cell and the plaintiff feared for his life. Within seconds of the attack,

the correctional officers responded and effectively broke up the altercation and saved the plaintiff from further attack and likely injury. Instead of being lauded for their professional response to this incident, the defendants have now been sued by the plaintiff for allegedly using "excessive force" in stopping the altercation. Surely, if the defendants had taken no action and allowed the altercation to continue, the plaintiff would have sued them for "failing to intervene." Such is the plight of a correctional official. For all of the foregoing reasons, the defendants request the Court to grant their Motion for Summary Judgment.

                DEFENDANTS
                Larry Myers, et al.

                RICHARD BLUMENTHAL
                ATTORNEY GENERAL

BY:    /s/
        Matthew B. Beizer
        Assistant Attorney General
        110 Sherman Street
        Hartford, CT  06105
        Federal Bar #ct16304
        E-Mail:  matthew.beizer@po.state.ct.us
        Tel.: (860) 808-5450
        Fax: (860) 808-5591

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 22nd day of October, 2004:

Jermaine Jones #204600
MacDougall-Walker Correctional Institution
1153 East Street South
Suffield, CT  06080

                /s/
                Matthew B. Beizer
                Assistant Attorney General