UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------X
                                            :
JERMAINE JONES                              :
                                            :          PRISONER
                                            :          3:03CV595 (JGM)
v.                                          :
                                            :
                                            :
LARRY MYERS ET AL.                          :          DATE: JUNE 3, 2005
                                            :
---------------------------------------------X

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Jermaine Jones, an inmate confined at the MacDougall Correctional

Institution in Suffield, Connecticut, filed this action pro se and in forma pauperis pursuant

to 28 U.S.C. § 1915, on April 2, 2003.  (Dkt. #1; see also 5/30/03 endorsement thereon).

On April 2, 2003, plaintiff filed his Complaint, alleging that defendants Warden Larry Myers,

Major Thomas Coates, Lieutenant Salius, and John Doe used excessive force against him

while he was confined at Northern Correctional Institution in Somers, Connecticut on

December 20, 2002. (Dkt. #2).[1]  On July 24, 2003, plaintiff filed his Amended Complaint

naming additional defendants Captain Matthew Regan, Lieutenant Dennis Marinelli, K-9

Officer Duscharme (previously John Doe), and K-9 Dog Mike.[2] (Dkt. #9). On June 10, 2004,

---

[1] Attached was the original of an Inmate Grievance Form A,
Level 1, signed by plaintiff on February 4, 2003, which was
reviewed by defendant Coates on March 14, 2003.

[2] He also included the first name of defendant Lieutenant
Scott Salius.

The following exhibits were attached: a copy of the Inmate
Grievance Form A, Level 1, dated February 4, 2003; copy of page 2
of Grievance Form A, Level 1; copy of Inmate Grievance Form B,
Levels 2 and 3 (with page 2), signed by plaintiff on March 27,
2003 and July 14, 2003, and received on July 8, 2003 and July 29,
2003; copy of Medical Report, dated December 20, 2002; copy of
Physician's Orders, from 10/1/02 through 12/20/02; and copy of

defendants Coates, Duscharme, Marinelli, Myers, Regan, and Salius filed their Answer, with affirmative defenses, to plaintiff's Amended Complaint. (Dkt. #32).

On October 27, 2004, plaintiff filed a Motion to Compel Summons of Complaint upon defendant Regan.  (Dkt. #38).  However, shortly thereafter, on January 21, 2005, plaintiff filed a Motion to Dismiss Complaint on Defendant Captain Regan (Dkt. #41), which was granted by this Magistrate Judge on February 1, 2005. (Dkt. #42).  Therefore, plaintiff's Motion to Compel Summons of Complaint (Dkt. #38) is denied without prejudice as moot.

On May 3, 2004, the parties consented to trial before this United States Magistrate Judge. (Dkt. #30).  On October 26, 2004, defendants filed the pending Motion for Summary Judgment, brief and affidavit in support, and Local Rule 56(a)1 Statement.  (Dkts. ##37, 37-1, 37-2, 37-3 & 37-4).[3]  On February 2, 2005, plaintiff filed his brief in opposition.  (Dkt. #43).

For the reasons stated below, defendants' Motion for Summary Judgment (Dkt. #42) is granted.

## I. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See FED. R. CIV. P.  Rule 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); SBC Communications, Inc. v. Herrick Co., Inc., 360 F.3d 329, 338 (2d Cir. 2004). The moving party may satisfy this burden "by showing-that is pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir.

---

Clinical Record, from 8/3/02 through 12/29/02.

[3]Attached to the affidavit of defense counsel, dated October 22, 2004 (Dkt. #37-3), is a copy of the Department of Correction Security Division Videotape, NCI-02-1079 concerning the December 20, 2002 incident.

2002)(per curiam)(internal quotation marks & citations omitted); accord Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

As Rule 56(c) provides, a court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. . . ." A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.)(quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991)(citation omitted). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)(internal quotations & citations omitted).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523 (citation omitted). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.)(citation omitted), cert. denied, 502 U.S. 849 (1991). If, "'as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'"

Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004)(multiple citations omitted).

A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31,33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993)(holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible)(citations omitted). A self-serving affidavit which reiterates the conclusory allegations of the complaint in the affidavit form is insufficient to preclude summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990).

The burden placed upon the nonmoving party is not altered simply because plaintiff is a pro se litigant. Soto, 1991 WL 218481, at *6.  As Soto explains: "At some point in a law suit even pro se litigants must make clear to the court their claims and the facts that they believe entitle them to specific relief. The summary judgment stage is an appropriate juncture to identify the real issues in a case." Id. (internal quotations & citation omitted).

## II. FACTUAL BACKGROUND

The factual summary is based on defendants' Local Rule 56(a)1 Statement of Facts. (Dkt. #37-2)["Defendant's Statement"].[4]

---

[4]As previously indicated, defendants filed their Motion for Summary Judgment on October 26, 2004.  (See Dkt. #37). On December 9, 2004, the pro se plaintiff was provided written notice of his obligation to respond to the motion and of the contents of a proper response. (Dkt. #40). On February 2, 2005, plaintiff filed a document entitled "Opposition to Defendant[s'] Motion for Summary Judgment" (Dkt. #43), but did not attach a Local Rule 56(a)2 Statement. Because plaintiff has not submitted

On December 20, 2002, plaintiff was confined at Northern Correctional Institution. (Defendants' Statement ¶ 3; Dkt. #9, at 4). At approximately 5:00 p.m., plaintiff entered his cell and was physically attacked by his cellmate, who had a weapon, and a physical altercation ensued; plaintiff was in fear for his life. (Defendants' Statement ¶¶ 4-6; Dkt. #9, at 4). Almost immediately after the altercation began, several correctional officers and a trained canine responded to and entered the cell while the two inmates were still fighting. (Defendants' Statement ¶¶ 7-9, Dkt. #9, at 4; Beizer Aff't, Attachment A, NCI-02-1079, Videotape of December 20, 2002 ["Videotape"]). A chemical agent was deployed (Dkt. #9, at 4) and the inmates were ordered to stop fighting. (Id.; Videotape). The inmates did not comply with the order. (Dkt. #9, at 4; Videotape). Within seconds, the officers and canine separated the two inmates. (Defendants' Statement ¶ 10; Dkt. #9, at 4; Videotape). Once the inmates were separated, the canine was removed from the cell. (Defendants' Statement ¶ 11; Videotape).

## III. DISCUSSION

Plaintiff asserts a claim of use of excessive force based on his allegation that defendant Duscharme permitted the security dog to attack him after his cellmate had been

---

a Local Rule 56(a)2 Statement, defendants' facts are deemed admitted. See D. CONN. L. CIV. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2."). However, **the Second Circuit has clarified that there must be support in the record for the unopposed Rule 56(a) statements before such statements may be accepted as true. See Giannullo v. City of New York**, 322 F.3d 139, 140 (2d. Cir. 2003). Accordingly, the Court also considers the documents attached to plaintiff's Amended Complaint, see notes 1-2 supra, and the videotape of the December 20, 2002 incident attached to defense counsel's affidavit, see note 3 supra.

subdued and removed from the cell. (Dkt. #9, at 4-5).[5]

Defendants raise three arguments in support of their motion for summary judgment: (1) plaintiff fails to assert a constitutionally viable claim for use of excessive force (Dkt. #37-1, at 4-7); (2) plaintiff has not demonstrated the personal involvement of defendants Myers, Coates, Salius, and Marinelli in the alleged constitutional violation (id. at 8-10); and (3) all defendants are protected by qualified immunity (id. at 10-12).

A. PERSONAL INVOLVEMENT

Defendants contend that plaintiff has not demonstrated the personal involvement of defendants Myers, Coates, Salius, and Marinelli; all four defendants are supervisory officials (Dkt. #37-1, at 8-10). Only defendants Salius and Marinelli were present during the incident (id. at 9-10; see also Dkt. #9, at 4-5).[6]

"A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002)(citation omitted). Section 1983 imposes liability only on the official causing the violation. Thus, the doctrine of respondeat superior is inapplicable in section 1983 cases. See Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999)(citations omitted); Prince v. Edwards, 2000 WL 633382, at *6 (S.D.N.Y. May 17, 2000)("Liability may not be premised

---

[5]Although plaintiff alleged that defendant Salius sprayed a chemical agent into the cell (Dkt. #9, at 4), the Court does not consider the use of the chemical agent to be included in this excessive force claim. Plaintiff argues that he exhausted his administrative remedies with regard to this claim and has attached copies of the grievance forms to his Amended Complaint. These grievances, however, only refer to the use of the security dog, and there is no reference to the use of the chemical agent.

Moreover, in his Amended Complaint, plaintiff concedes that the chemical spray was necessary to retrieve the weapon from plaintiff's cellmate. (Dkt. #9, at 4).

[6]Defendant Marinelli appears and speaks on the video of the incident. (Videotape). Defendant Salius is referenced as the officer who remained with plaintiff after the incident.

on the <u>respondeat superior</u> or vicarious liability doctrines,. . . nor may a defendant be liable merely by his connection to the events through links in the chain of command.")(internal quotations & citation omitted).

Plaintiff may show supervisory liability by demonstrating one or more of the following criteria: (1) defendant actually and directly participated in the alleged acts; (2) defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) defendant was grossly negligent in his supervision of the correctional officers who committed the constitutional violation; or (5) defendant failed to act in response to information that unconstitutional acts were occurring. <u>See Hernandez v. Keane</u>, 341 F.3d 137, 145 (2d Cir. 2003)(multiple citations omitted). In addition, plaintiff must demonstrate "an affirmative causal link between the supervisor's inaction and [his] injury." <u>Poe</u>, 282 F.3d at 140 (multiple citations omitted).

In the Amended Complaint, plaintiff's only allegation against defendant Myers is that he was the Warden of the facility. (Dkt. #9, at 3). Besides identifying defendant Coates as a Major (<u>id.</u> at 3), plaintiff's only other allegation is that he tried to exhaust his administrative remedies with defendant Coates "who agreed to the incident at hand." (<u>Id.</u> at 4). Plaintiff has neither alleged nor presented evidence that defendants Myers and Coates were involved in the incident, were aware of the response to the altercation, or inappropriately supervised correctional staff. In his brief in opposition, plaintiff has conceded that defendant Coates was not informed of the incident until thirty minutes later and defendant Myers was not made aware of the incident until three months later. (Dkt. #43, at 11). He has presented no evidence to suggest the existence of any policy sanctioning inappropriate use of security dogs. Receiving information about one isolated incident after the incident occurred is

insufficient to establish supervisory liability. Thus, plaintiff has not met his burden to demonstrate the existence of a genuine issue of material fact regarding the conduct of defendants Myers and Coates. Therefore, defendants' motion for summary judgment is granted with regard to all claims against Myers and Coates.

As previously indicated, defendants Salius and Marinelli did respond to the altercation. The Court cannot discern from the videotape who ordered defendant Duscharme and the security dog into the cell. Thus, defendants' motion for summary judgment is denied as to the claims against defendants Salius and Marinelli on this ground.

B. USE OF EXCESSIVE FORCE

Defendants argue that plaintiff has failed to state a cognizable claim for use of excessive force and refer the Court to the videotape of the incident. (Dkt. #37-1, at 7; Videotape).

When confronted by a disturbance, correctional officers must balance the threat the disturbance poses to inmates, staff and others against the harm the inmate might suffer if force is used. This decision is made quickly and under pressure. When considering the use of force by correctional officers, the court must determine "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)(internal quotations & citations omitted). The court considers objective and subjective components to an excessive force claim. See id. at 8. The objective component relates to the level of physical force used against the inmate and whether that force is repugnant to the conscience of mankind. See id. at 9-10 (citations omitted). The subjective component focuses on whether the correctional officers had a "wanton" state of mind when they were applying the allegedly excessive force. See id. at 8.

An excessive force claim cannot be decided merely by considering the extent of an

inmate's injuries. See Perkins v. Brown, 285 F. Supp. 2d 279, 283 (E.D.N.Y. 2003)(acknowledging that claim of excessive force may be established even if the victim does not suffer serious or significant injury)(citations omitted). Instead, the court uses the extent of the inmate's injuries as one factor in determining whether the use of force could have been thought necessary by correctional staff or demonstrated an unjustified infliction of harm. See Hudson, 503 U.S. at 7 (citations omitted).[7] Other factors to be considered are the need for use of force, the threat perceived by correctional staff and the relationship between the perceived threat and the amount of force used. See id. (citation omitted).

        Plaintiff alleges that his cellmate was attacking him with a weapon and that he feared for his life. (Dkt. #9, at 4). The videotape confirms that the inmates did not respond to orders to stop fighting. (Videotape).  All parties concede that a chemical agent was used. (Dkt #9, at 4; Answer, at 2, ¶ 5).  The use of the chemical agent cannot be seen on the videotape. (Videotape).[8]  Contrary to plaintiff's allegations, the videotape shows that the inmates still were fighting when defendant Duscharme and the security dog entered the cell. (Id.).  Fewer than fifteen seconds elapsed from the time the security dog entered the cell and the time the dog was moved away from the inmates. (Id.).  As soon as the inmates were separated and subdued, the dog was removed from the cell. (Id.).

        The Court concludes that defendants reasonably could have perceived a serious threat to plaintiff's life; indeed, plaintiff concedes that he feared for his life and a weapon

---

[7]Plaintiff alleges that he suffered one wound to his upper left torso, two wounds on his left arm, and one wound to his buttocks.  (Dkt. #9, Page 2 of Grievance Form A, Level 1; Inmate Grievance Form B, Levels 2 and 3).   Plaintiff received medical treatment for two of these wounds, for which there was a "[s]cant amount of bleeding."  (Dkt. #9, Medical Incident Report). Moreover, a mental health assessment that evening indicated that plaintiff had a "cheerful affect." (Dkt. #9, Clinical Report).

[8]See also n. 5 supra.

ultimately was retrieved from plaintiff's cellmate. The inmates did not respond to verbal commands or the use of a chemical agent. Under these circumstances, the use of a security dog for a brief period was the fastest and safest way to end the altercation, to secure the inmates, and to protect plaintiff from his cellmate (who had a weapon), and it was reasonable for defendants to perceive such action to be necessary. Plaintiff has presented no evidence to support his version of the events.   Accordingly, defendants' motion for summary judgment is <u>granted</u> as to all claims for use of excessive force.[9]

### C. CLAIMS AGAINST DEFENDANT K-9 MIKE

Plaintiff includes as a defendant in the his Amended Complaint K-9 Mike, the security dog used on December 20, 2002. (Dkt. #9, at 3). Although not raised in defendants' motion and brief, under 28 U.S.C. § 1915 (e)(2)(B)(ii), the court shall dismiss at any time allegations that fail to state a claim upon which relief may be granted. Section 1983 claims are cognizable only against persons, whereas defendant K-9 Mike is a dog. <u>See Dye v. Wargo</u>, 253 F.3d 296, 299-300 (7th Cir. 2001)(holding that a police dog is not a person subject to suit under section 1983). Thus, plaintiff cannot state a cognizable claim against this defendant, so that the remaining claims against defendant K-9 Mike are dismissed.

### D. STATE LAW CLAIMS

In his Amended Complaint, plaintiff invokes the Court's supplemental jurisdiction over unspecified state law claims. (Dkt. #9, at 1).

Supplemental or pendant jurisdiction is a matter of discretion, not of right. <u>See United Mine Workers v. Gibbs</u>, 383 U.S. 715, 715-26 (1966). Where all federal claims have been dismissed before trial, pendant state claims should be dismissed without prejudice and left

---

[9]In light of the conclusion reached in this section, there is no need to address defendants' argument regarding qualified immunity.

10

for resolution by the state courts. <u>See</u> 28 U.S.C. § 1367 (c)(3); <u>Giordano v. City of New York</u>, 274 F.3d 740, 754 (2d Cir. 2001)(collecting cases). To the extent that plaintiff's Amended Complaint may be construed to assert state law claims, the Court declines to exercise supplemental jurisdiction over those claims.

<u>IV. CONCLUSION</u>

For the reasons stated above, defendants' Motion for Summary Judgment (Dkt. #37) is <u>granted as to all of plaintiff's claims, including any state law claims</u>.  <u>The Clerk is directed to enter judgment in favor of defendants and to close this case.</u>

The parties have consented to the exercise of jurisdiction by this United States Magistrate Judge and the case was transferred to the undersigned for all purposes including the entry of judgment on May 3, 2004. (<u>See</u> Dkt. #30.)  Accordingly, this is not a Recommended Ruling.

Dated at New Haven, Connecticut, this 3rd day of June, 2005.


<u>           /s/                </u>

Joan Glazer Margolis
United States Magistrate Judge